Hackleman *et al. v.* Goodman.

No. 7984.

## HACKLEMAN ET AL. *v.* GOODMAN.

CHATTEL MORTGAGE.—*Release of Equity of Redemption.*—A mortgagor may release his equity of redemption to the mortgagee at any time after the original transaction; but such release will be closely scrutinized by the courts, and the fairness of the transaction, and the value received by the mortgagor, must be shown by clear and satisfactory evidence.

SAME.—*Possession of Mortgagee not Absolute.*—*Equity of Redemption May be Sold.*—A mortgagee takes his mortgage subject to the provisions of the statute, that the equity of redemption in goods and chattels may be levied upon and sold on execution, and, as long as the equity exists, his possession is subject to this right in favor of creditors of the mortgagor.

SAME.—He who takes a chattel mortgage impliedly assents to the temporary interruption of his possession, for the purpose of disposing of the equity of redemption.

SAME.—*Evidence, Insufficiency of to Sustain Finding.*—Where a mortgagor of growing wheat, upon its ripening for harvest, was employed by the mortgagee to cut the wheat and put it in stack, and did so, but no price was fixed upon the wheat nor allowance made for the price of his labor, and no part of the debt was extinguished, and while in the stack the wheat was levied on by the sheriff, by virtue of executions issued on judgments against the mortgagor, the evidence fails to sustain the findings that the equity of redemption had been extinguished, and that the sheriff's possession and sale were not lawful.

From the Fayette Circuit Court.

*C. Merrill* and *R. Conner*, for appellants.
*T. M. Little* and *J. I. Little*, for appellee.

MORRIS, C.—This action was brought to recover the possession of one-half of thirty-two acres of wheat, in rick on the Petty farm, in Fayette county.

The appellants answered the complaint by a general denial. The cause was submitted to the court. Finding for the appellee. The appellants moved for a new trial on the ground that the finding of the court was contrary to the evidence. The motion was overruled. The evidence is made part of the record by a bill of exceptions.

The error assigned is, that the court erred in overruling the appellants' motion for a new trial.

It appears, from the evidence, that on the 6th day of December, 1877, one Simon Ostheimer, who was the owner of the wheat in controversy, then growing upon the ground, executed a chattel mortgage on the same, conveying it to the appellee to secure the payment of two notes, one dated January 1st, 1876, calling for $264.75, due one day from date; the other dated January 1st, 1877, calling for $138, and due two years from date, both executed by Ostheimer, and payable to the appellee. In January, 1878, Ostheimer told the appellee, when asked to pay the notes, that he had no money, and would have to turn over to appellee the wheat. The appellee agreed to take the wheat, sell it, and apply the proceeds upon the notes and mortgage. In July, 1878, Ostheimer again saw the appellee, told him the wheat was getting ripe; asked him if he would cut it. The appellee told him that he had no time to cut the wheat; that he, Ostheimer, should cut it and put it in rick, and he would allow him on account what his labor was worth. Ostheimer agreed to this, cut the wheat, and put it in stack. There was no price put upon the wheat, nor is it shown that the appellee ever had any settlement with Ostheimer by which the price of his labor, in caring for the wheat, was fixed.

It was admitted that the appellant and his partner, Thomas, had obtained a judgment in the Fayette Circuit Court, on the 1st day of January, 1878, against said Ostheimer for $504; that an execution, in due form, was issued on this judgment, directed to the appellant Ball, as sheriff of Fayette county, who, on the 20th day of August, 1878, levied the same on the wheat in controversy, then in stack on the Petty farm; that he duly advertised the wheat for sale, and on the 2d day of September, 1878, by virtue of said execution, sold the same to appellants Hackleman and Thomas for $145. It appears, from the evidence, that the appellee attended the sale, and gave due notice of his claim to the purchasers. He also says that he demanded the possession of the wheat be-

fore commencing this suit.   Smith, the attorney of the appellee, attended the sale, and told those present that whoever purchased the wheat would buy it subject to the appellee's mortgage.   About a month after the sale, the appellants, Hackleman and Thomas, threshed and sold the wheat.   After paying for the threshing, there was about 250 bushels, worth eighty-five cents per bushel.   The mortgage was duly recorded in Fayette county within the time required by law.

The question involved in this case, as presented upon the evidence, is, had Ostheimer, at the time the levy was made, August the 20th, 1878, an equity of redemption in the wheat in controversy?   If he had, then the levy upon the wheat was lawful, and the sheriff's possession of it at the time of the commencement of this suit, August the 28th, 1878, was not unlawful.   *Olds* v. *Andrews*, 66 Ind. 147 ; *Mobley* v. *Letts*, 61 Ind. 11 ; *Sidener* v. *Bible*, 43 Ind. 230 ; *Landers* v. *George*, 49 Ind. 309.   The statute provides that the mortgagor's equity of redemption in goods and chattels may be levied upon and sold on execution.   The mortgagee takes his mortgage subject to this provision of the statute, and as long as this equity exists, though he may have possession of the goods, his possession is subject to this right in favor of the creditors of the mortgagor, and his possession may be temporarily interrupted for the purpose of disposing of the equity of redemption.   He who takes a chattel mortgage, impliedly assents to such interruption of his possession.   In the case of *Sparks* v. *Compton*, 70 Ind. 393, the sheriff had, by sec. 469, 2 R. S. 1876, p. 218, the right to the possession of the mortgaged chattels, as against the mortgagee, for the purpose of levy and sale.   Herman says, "where the mortgagor, in accordance with the terms of the instrument, delivers possession of the property to the mortgagee after breach of condition, it will not vest the absolute ownership in the mortgagee or free it from the mortgagor's right of redemption, and therefore until the mortgagee, by legal

notice and sale of the goods, or by a judicial foreclosure and sale of them, cuts off the equity of redemption, it is liable to seizure and sale by the creditors of the mortgagor." Herman Chattel Mortgages, 461.

It is insisted by the appellee that Ostheimer's equity of redemption had been extinguished; that his statements that he could not pay, that he would have to turn over the wheat to the appellee, that the latter should take it, sell it, and apply the proceeds upon the debt, amounted to a release of the equity of redemption.

"A mortgagor," says Herman, p. 44, "may release his equity of redemption to the mortgagee at any time subsequent to the original transaction. Such releases will be closely scrutinized by courts; the fairness of the transaction, and the value received by the mortgagor, must be shown by clear and satisfactory evidence." In the case of *Holridge* v. *Gillespie*, 2 Johns. Ch. 30, the Chancellor says: "The general principle is, 'once a mortgage, always a mortgage;' and though, no doubt, the equity of redemption may be released upon fair terms, yet the fairness and value must distinctly appear."

No price was agreed upon; no part of the debt was extinguished. The mortgage and its breach entitled the appellee to the possession of the wheat, and gave him the right to sell. The statements made to the appellee by Ostheimer, that he must turn over the wheat, that the appellee should sell it and apply the proceeds upon the debt, gave him no additional right, and, until such sale should be made, the right of redemption continued. The arrangement was simply an assent, on the part of Ostheimer, to the assertion and exercise by the appellee of his rights as mortgagee. And this view is strengthened by the subsequent conversation between the parties. Ostheimer tells the appellee that the wheat is ripening, and asks him if he intends to cut it. The appellee replied that he had no time to do so; that Ostheimer should

cut it, and he would credit him for his labor. This conver-
sation tends very strongly to show that Ostheimer was, in his
judgment and in that of the appellee, still interested in the
wheat. It was he, not the appellee, that seemed to be inter-
ested in, and giving attention to, the mortgaged property. No
one would doubt, we think, that a tender of the debt at that
time to the appellee would have discharged the mortgage.
"No waiver or renunciation by a mortgagor of the right of
redemption, however express, will be allowed to impair his
power of exercising it himself, or transferring it to another."
Herman Chattel Mortgages, p. 43. The most that can be
said of the conversations between the appellee and Ostheimer
is, that they imply a purpose on the part of the mortgagor to
waive his right of redemption. The mortgage still existed,
and the right of redemption, as its inseparable incident,
continued also.

The appellee insists, that, as the mortgage debt exceeds
the value of the wheat, the transaction was fair. But the
question is, did the mortgagor in fact release his equity of
redemption? not what he might fairly have done. The mort-
gage covered other property—600 bushels of corn in rail
pens at the time. No part of the mortgage debt was ex-
tinguished. We would gladly reach the conclusion, if we
could, that Ostheimer's right of redemption had been extin-
guished. It would probably save litigation and expense,
and result in no injustice to any one. But we are unable to
avoid the conclusion, that at the time the sheriff levied upon
the wheat, and at the time this suit was commenced, Os-
theimer had an equity of redemption in the wheat.

We think the court erred in overruling the appellants'
motion for a new trial, and that, for this error, the judg-
ment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion,
that the judgment below be reversed, at the costs of the
appellee.